UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SAIF AWAN,

      Plaintiff,

v.                             ACTION NO. 2:17cv189

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Saif Awan ("Awan") seeks judicial review of the Acting Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") of the Social Security Act. Awan claims that the Administrative Law Judge ("ALJ") improperly analyzed medical evidence, failed to give appropriate weight to the findings of a treating physician as required by Federal Regulations, and erred in finding he was not disabled. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the undersigned recommends that the final decisions of the Commissioner be affirmed.

1

## I.   PROCEDURAL BACKGROUND

Awan filed an application for DIB and SSI on July 25, 2012, alleging a disability onset date of May 29, 2012. (R. at 15). The Commissioner denied his application initially, (R. at 103), and upon reconsideration, (R. at 110). Awan requested an administrative hearing, which occurred on September 29, 2015. (R. at 31).

An ALJ determined that Awan was not disabled within the meaning of the Social Security Act, and denied his claim for benefits. (R. at 12).  The Appeals Council declined to review the ALJ's decision, (R. at 1), making the ALJ's decision the final decision of the Commissioner.  Awan filed this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  This case is now before the court in order to resolve the parties' cross-motions for summary judgment.

## II.   FACTUAL BACKGROUND

Awan was 43 years old at his alleged onset date.  (R. at 23).  He completed high school and had previously worked as a cashier and cab driver.  (R. at 192).  He continued to work periodically during his claimed disability.  (R. at 34-37, 367). In describing his physical activity during the application process, Awan stated that he helped his children with homework,

2

cared for himself, assisted with housework such as laundry and vacuuming. He drove, shopped in stores, handled his finances, and socialized with friends. (R. at 207, 213).

The ALJ found Awan had only one severe impairment, degenerative disc disease. His arguments in this court do not contest this aspect of the ALJ's findings. As a result, the following review of his medical record is limited to his treatment for that condition.

Awan first treated for lumbar pain with Dr. Theresa Jackson of Virginia Orthopaedic and Spine Specialists. (R. at 366-67). Dr. Jackson noticed that Awan exhibited pain with forward flexion of the cervical spine and tightness across his trapezius. Awan was markedly tender to palpation in the lower lumbar region. Id. In addition she observed decreased range of motion, decreased sensation in the lower extremities and a positive straight leg raising test. Lumbar spine x-rays revealed mild scoliosis and mild disc space narrowing at L4/L5, as well as other degenerative changes. She prescribed medication and administered a steroid injection. The following month, Dr. Jackson continued to observe tenderness over the lumbar spine and a positive straight leg raising test, but noted that Awan had otherwise improved. An MRI reviewed that day revealed a disc bulge of mild facet arthropathy, broad based

disc protrusion, an annular tear, moderate spinal stenosis and nerve root displacement. (R. at 365, 798-99). Dr. Jackson recommended physical therapy and increased Awan's medication. (R. at 365).

Awan apparently attended physical therapy at In Motion Physical Therapy between December 20, 2012, and January 29, 2013. At the conclusion of his therapy his therapist reported he had "shown slow functional gains with PT." (R. at 432). He reported his pain was a 6.5 out of 10, but other goals of therapy were not met and he was discharged as a result of lack of appreciable progress towards goals. Id. On January 29, 2013, Awan returned to Dr. Jackson complaining of pain and lower extremity weakness. He exhibited signs of pain but his straight leg raising test was negative and he had intact sensation. Dr. Jackson noted that he continued to work as a cab driver and the constant sitting caused him pain. (R. at 363). She prescribed a TENS unit.

On March 19, 2013, Dr. Jackson continued to note tenderness on palpation of Awan's lumbar spine, a positive straight leg raising test and 4/5 strength. She revised Awan's medications. The following month, Awan reported improvement with the injections and medication. (R. at 388). When Awan's complaints of pain continued to the summer of 2013, Dr. Jackson recommended

4

additional facet injections and eventually a radiofrequency ablation. (R. at 405-06). When he returned to Dr. Jackson on October 10, 2013, he reported "some mild improvement" after the RF procedure, but still complained of 10/10 pain with medication. (R. at 795). He was tender to palpation on the lower lumbar spine and had difficulty transitioning from a sit-to-stand but still maintained a 4/5 strength in the lower extremities.

In August 2013, Awan consulted with Dr. Donald Bernardini, a pain management specialist. He observed that Awan walked with "an antalgic gait," had a reduced lumbar range of motion, and tenderness in both the thoracic and lumbar regions. (R. at 416). Otherwise, Dr. Bernardini recorded normal neurologic findings. He diagnosed chronic pain syndrome, lumbosacral spondylosis without myelopathy, degeneration of the lumbosacral intervertebral disc, and lumbar spinal stenosis without neurogenic claudication. (R. at 416-17).

On December 3, 2013, Awan consulted with Dr. Mark Kerner of the Virginia Orthopaedic and Spine Center. He observed positive straight leg raising tests and pain with range of motion in the spine, but essentially normal strength, reflexes, normal sensory deficits, a normal gait, and normal upper extremities. (R. at

790).   He diagnosed probable Discogenic Pain Syndrome, noting that Awan was "hyper emotive."  (R. at 791).

In February 2014, Awan returned to Dr. Jackson, who administered additional injections and referred him for a second MRI.  The MRI revealed multi-level spinal stenosis with severe neural foraminal narrowing.  (R. at 779).  An EMG also revealed S1 radiculopathy.  Dr. Jackson revised Awan's medication.  (R. at 777).

In May 2014, Awan returned to the pain management specialist, Dr. Bernardini, who noted intact motor testing results, a negative straight leg raising test, normal reflexes and normal sensation.  (R. at 526, 557-58).  He recommended another radiofrequency ablation.  (R. at 558).

In June 2014, Dr. Kerner determined that Awan was a surgical candidate for a lumbar laminectomy.  (R. at 678-96, 773-74).  Following the surgery Awan initially reported that his back pain had improved but he continued to experience right leg pain.  (R. at 771).  On August 26, 2014, a few months following surgery, Awan demonstrated normal strength, sensation and reflexes, but continued to complain of severe back and radiating leg pain.  (R. at 770).

Dr. Kerner noted that "while this pain has improved since surgery, it is still quite significant, and he appears to be

6

quite disabled." (R. at 770). He scheduled a follow-up visit in six weeks hoping that as things stabilized and healed he would feel better. Dr. Kerner wrote that he was "concerned about the magnitude of his pain with a paucity of objective findings." (R. at 770). On October 7, 2014, Dr. Kerner followed up again, noting "on an objective basis, he is neurologically intact," but Awan continued to complain of pain, only minimally improved from his surgery. The MRI revealed "no continuing stenosis," just mild inflammatory changes consistent with previous surgery. X-rays demonstrate no gross instability, though degenerative changes at L4/L5, L5/S1. (R. at 764).

Awan's last recorded visit with Virginia Orthopaedic and Spine Specialists involved a consult with LaTara C. Harris, FNP, on April 1, 2015. NP Harris noted that Awan complained of increased lower back pain over the last several days as a result of shifting in his bed while he was asleep. She observed he had 4/5 strength to bilateral lower extremities, a negative straight leg raising test, but observed tenderness at primarily L4/L5. He was full weight bearing with a non-antalgic gait. (R. at 762). She administered a Toradol injection as well as Medrol dose pack and scheduled a return visit.

In addition to Awan's treating physicians, the ALJ also considered evidence from two Agency physicians who reviewed the

medical records and offered opinions about his physical limitations.[1]  State Agency Physician Joseph Familant, M.D. reviewed Awan's medical record in May 2013 and concluded that he could lift and carry ten pounds, stand and walk two hours per day and sit up to six hours per day.  (R. at 68-70).  Dr. Familant also opined that Awan should avoid climbing and only occasionally stoop, kneel, crouch or crawl.  Id.  During the reconsideration review in February 2014, a second Agency Physician, Robert Keely, M.D., reached essentially the same conclusions.  (R. at 97-98).

At the hearing on his claim for benefits, Awan testified that he was working 20-25 hours per week as a cashier or supervisor in a convenience store which also offered take-out meals.  (R. at 34-35).  He stated that he stopped working after his surgery and then returned in May 2015.  (R. at 37).  The ALJ observed that his earnings in both 2012 and 2013 amounted to substantial gainful activity (SGA).

Awan testified that he lived with his wife and five children.  He stated that he took naproxen, oxycodone, Advil, and morphine for his pain, but was able to drive.  He sometimes shopped with his wife, but stated all other housework, including

---

[1] An Agency Psychologist also evaluated Awan's claimed mental limitations and concluded he had no medically determinable mental impairments.  (R. at 67). Awan has not challenged this finding in this court.

cooking, laundry, and vacuuming were done by his wife or children. (R. at 41). On examination by his attorney he stated that he managed his part-time work by relying on co-workers and taking pain medication. (R. at 45-46). He described the various medical treatments to his back, concluding that none provided lasting relief. (R. at 44-45).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its

judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.   "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."   Craig, 76 F.3d at 589.   The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390.   Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.   Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

To qualify for DIB under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. See 42 U.S.C. §§ 416(i) and 423.

The Social Security Regulations define "disability" as the:

> Inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

10

> which has lasted or can be expected to last
> for a period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§423(d)(1)(A) and
416(i)(1)(A).  To meet this definition, a claimant must have a
"severe impairment" which makes it impossible to do previous
work or any other substantial gainful activity that exists in
the national economy.  20 C.F.R. § 404.1505(a); see 42 U.S.C. §
423(d)(2)(A).

The regulations promulgated by the Social Security
Administration provide that all material facts will be
considered in determining whether a claimant has a disability.
The Commissioner follows a five-step sequential analysis to
ascertain whether the claimant is disabled. The five questions
which the ALJ must answer are:

1. Is the individual involved in substantial gainful
   activity?

2. Does the individual suffer from a severe impairment
   or combination of impairments which significantly
   limit his or her physical or mental ability to do
   the work activities?

3. Does the individual suffer from an impairment or
   impairments which meet or equal those listed in 20
   C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed
   impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments
   prevent him or her from performing his or her past
   relevant work?

5. Does the individual's impairment or impairments
   prevent him or her from doing any other work?

11

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65. F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962). At all steps, the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d 1456.

A.   **The ALJ's Decision**

In this case, after conducting the foregoing analysis, the ALJ concluded that Awan met the insured status requirements from his alleged disability onset date, May 29, 2012, through his date last insured, December 31, 2019, but had not been under a

12

disability within the meaning of the Social Security Act between the alleged disability onset date and the date of the hearing. (See R. at 17, 25).

At step one, the ALJ found Awan had engaged in substantial gainful activity after his alleged onset date in 2012 and through December 2013, but that he had a continuous 12-month period during which his work had not reached SGA levels. R. at 17. At step two, the ALJ found that Awan suffered from degenerative disc disease. (R. at 18) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At step three, the ALJ found that Awan did not suffer from a listed impairment or combination of impairments that met the severity of one of the listed impairments. (R. at 18). At step four, the ALJ found that Awan could not perform his past work. (R. at 23) (citing 20 C.F.R. §§ 404.1565, 416.965). The ALJ then crafted an RFC designed to accommodate Awan's several impairments. Specifically, he found he had:

> the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), provided that the work involves no climbing or work around unprotected heights or around dangerous machines, only occasional stooping or squatting and no crawling.

(R. at 19-23). At step five, relying on the testimony of the VE after presenting her with this RFC in hypothetical form, the ALJ

13

concluded that jobs exist in significant numbers in the national economy which Awan could perform.  (R. at 24).  Consequently, the ALJ determined Awan did not have a qualifying disability during the relevant period.  (R. at 25).

Awan now argues the ALJ erred in two ways.  First, he argues the ALJ failed to properly weigh the medical opinion evidence regarding his degenerative disc disease and back pain. Specifically, the alleged opinion of his treating orthopaedist, Dr. Kerner, that Awan "appears to be quite disabled."  Pl.'s Mem. at 14 (ECF No. 16).  Relatedly, he argues the ALJ failed to properly evaluate the medical evidence, and should have found him more limited and the resultant RFC lead to a finding that he was disabled.

As explained below, the ALJ did not err with respect to either of the issues Awan asserts.  Accordingly, there was no error in the ALJ's RFC determination requiring remand.

a.   <u>The ALJ relied on substantial evidence when giving weight to conflicting medical opinion evidence.</u>

Awan first argues the ALJ failed to properly explain why he discounted the opinion of his treating orthopaedist, Dr. Kerner, that Awan "appeared to be quite disabled."  Pl.'s Mem. at 14 (ECF No. 16).

When the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of

14

impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains a number of medical opinions from different sources that are consistent with each other, the ALJ is required to use that evidence to make a determination on disability. 20 C.F.R. §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent with each other or other evidence, the ALJ must evaluate the opinions and assign them persuasive weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d).

Ordinarily, a treating source's opinion will be given controlling weight if it is well-supported by medically acceptable diagnostic methodology and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Lewis v. Berryhill, 858 F. 3d 858, 867 (4th Cir. 2017); Craig, 76 F.3d at 590; SSR 96-2P, 1996 WL 374188 (July 2, 1996). But, the ALJ need not accept opinions from a treating source in every situation. For instance, when the source opines on the issue of whether the claimant is

disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence, or when it is not otherwise well-supported it is due no special deference. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d); Craig, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (citing Scivally v. Sullivan, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded.[2] See Lewis, 858 F. 3d at 868; Dunn, 607 F. App'x at 267. Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and

---

[2] The requirement to explain decisions regarding the weight accorded to medical evidence is not limited to evidence from treating physicians: in general, the ALJ must explain the reason he gave weight to any opinion before him. 20 C.F.R. § 404.1527(f)(2)(ii).

must be weighed using all of the factors provided in [the regulations]." SSR 96-2P at *5.

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically empower the ALJ—not the treating source—with the authority to determine whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Awan's primary argument is that the ALJ erred by affording little weight to the opinion of his treating orthopaedist, Dr. Kerner.[3] Pl.'s Mem. at 9, 13 (ECF No. 16); Pl.'s Reply at 3 (ECF No. 19). According to Awan's brief, Dr. Kerner's orthopaedic specialty and extensive treating relationship with the Claimant

---

[3]The ALJ actually considered opinion testimony from several treating physicians who had recorded vague statements suggestive of disability. (R. at 23). He afforded them little weight because they were either too vague to be persuasive, went to the ultimate issue of disability, or were inconsistent with the totality of the evidence. Id. In this court, Awan has primarily addressed Dr. Kerner's statement as it was the only post-surgical assessment in the record.

merit strong deference to his opinion testimony. The Commissioner argues that the weight assigned to Dr. Kerner's opinion testimony was supported by substantial evidence, and that the opinion Awan relies upon was due no special deference in any event. Def.'s Mem. at 14-15 (ECF No. at 18 at 14-15). The Commissioner is correct.

First, the opinion Awan primarily relies upon is not a medical statement but an opinion on the legal question of disability, which is always reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). In this regard, it is also significant that Dr. Kerner did not actually opine that Awan "was disabled," as he argues in his reply - only that he "appears quite disabled." This is significant in light of Dr. Kerner's contemporaneous observation that he was "concerned about the amount of his pain given the paucity of objective findings." (R. at 770). As the ALJ noted, any suggestion that Awan was quite disabled was contradicted by Dr. Kerner's progress notes three months following surgery which showed no stenosis and only ordinary post-surgical inflammation. (R. at 764). Following his treatment, Dr. Kerner observed that Awan had normal strength, intact reflexes, and no sensory deficits. (R. at 770). These inconsistencies and over-reliance on Awan's

18

subjective statements were both cited by the ALJ in affording this opinion by Dr. Kerner little weight.  (R. at 23).

The state agency doctors – though they evaluated the record prior to Awan's surgery – also concluded he was capable of sedentary work.  (R. at 68-70, 97-98).  Finally, Awan's self-report of activity, including his regular part-time employment as a cashier and convenience store supervisor, undermines his suggestion that the Commissioner erred in evaluating the medical evidence of Dr. Kerner's opinions.

Awan also argues the ALJ gave undue weight to the State Agency physicians' opinion that he was capable of sedentary work.  Pl.'s Mem. at 14 (ECF No. 16).  The ALJ gave significant weight to the opinion of the state experts that Awan had the ability to perform sedentary work because they were consistent with the totality of the evidence.  (R. at 23).

State Agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation.  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Therefore, when considering the opinion of a State Agency medical consultant, the ALJ must evaluate those findings just as he would for any other medical opinion.  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).  Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ is

19

required to explain the weight given to State Agency opinions. 20 C.F.R. §§ 404.1527(e), 416.927(e); see 20 C.F.R. §§ 404.1513a, 416.913a. Although consulting physicians' opinions cannot serve as a basis for denying benefits when contradicted by all of the other evidence in the record, they can be used as a basis for a determination of no disability if supported by other evidence before the ALJ. See Smith v. Schweiker, 795 F.2d 343, 348 (4th Cir. 1986).

As described above, there was significant evidence over the course of several years that Awan was capable of engaging in sedentary work notwithstanding his extensive treatment for low back pain. In fact, he was working at SGA levels during some of his claimed period of disability. Even at the time of the hearing Awan was working 25 hours per week as a convenience store clerk. In addition, the medical records from Dr. Kerner, both before and after Awan's surgery, suggest he had normal strength, intact reflexes and no sensory deficit. (R. at 790, 770). These records were consistent with the consulting physicians' opinions. The ALJ's opinion carefully considered the entire range of medical evidence, so it was not inappropriate for the ALJ to assign greater weight to the agency physicians' opinions.

20

Because the ALJ's decision to give little weight to certain opinions of Awan's treating physician and more weight to the state agency physicians was supported by substantial evidence, those decisions do not warrant remand.

b.   The ALJ properly evaluated all the medical evidence in determining Awan's RFC.

Awan's second argument is directed more generally at the ALJ's assessment of the medical evidence.  He argues that he has received extensive treatment for his back condition, including RA therapy, injections, and surgery, which he claims have not improved his low back pain.  As a result, he claims the ALJ did not properly consider the extensive nature of what he describes as failed treatment in concluding that he was not disabled.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.920(e)-(f), 416.945(a)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  The ALJ must consider all the medical evidence in the record.  Craig, 76 F.3d at 594-95; SSR 96-7p, 1996 WL 374186, at *5 n. 3 (July 2, 1996); see also SSR 96-8p, 1996 WL

374184, at *13 (July 2, 1996) (the "RFC assessment must be based on all of the relevant evidence in the case record") (emphasis added).

In evaluating the evidence in an appeal of a denial of benefits, the court does not conduct a blank slate review of the evidence, Smith, 795 F.2d 343, 345, or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Hancock, 667 F.3d at 472.   Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).   When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.   Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

While it is true that Awan submitted to various procedures to treat his low back pain, there is also substantial evidence that the treatments rendered him capable of sedentary work as further limited in his RFC.   For most of his claimed period of disability, Awan was working, sometimes at SGA levels.   (R. at 17, 37).   During his treatment by Dr. Bernardini, and Dr. Jackson records frequently recorded normal strength, joint range of motion, and sensory function.   (R. 526, 365).   The treatment

22

Dr. Bernardini administered, including nerve blocks and facet injections did provide some relief. (R. 388) (noting improvement following injections and nerve block); (525) (radiofrequency ablation in 2013 provided "several months of relief"). Likewise, before and after his surgery by Dr. Kerner, progress notes revealed good strength, normal reflexes and sensation. (R. 768, 770, 790).

Other than reviewing this admittedly extensive treatment history, Awan's brief does not identify any medical record suggesting he is incapable of sedentary work. He relies primarily on the statement of Dr. Kerner, following surgery, that he "appears quite disabled." This statement has already been addressed. Awan also observes that following surgery he was still reporting to the emergency room for treatment of low back pain. (ECF No. 16 at 11). During this visit, on March 27, 2015, the treating provider observed that Awan was complaining of low back pain. His physical examination revealed a normal range of motion, normal muscle strength, reflexes, coordination and gait. (R. 750). At the conclusion of his visit, he reported "feeling better" and was discharged with prescriptions for pain relievers, including Naproxen and Percocet. He was directed to return if symptoms worsened.

In addition, following his emergency room visit, Awan reported to Virginia Orthopaedic and Spine Specialists, again where he was examined by N.P. LaTara Harris. (R. 762). She noted that he had been to the emergency room, and also that he was complaining of low back pain. Her physical examination revealed 4/5 strength bilaterally in his lower extremities, a negative straight leg raising test, as well as a full weight-bearing, nonantalgic gait. On this visit, Awan again received a facet injection and pain relieving medication.

Contrary to Awan's briefing, this treatment history does not contradict or undermine the ALJ's quite limited RFC finding. In fact the RFC limiting Awan to sedentary work would preclude work he was actually performing (albeit part-time) on the date of his hearing. While it is true that Awan's treatment regimen has not completely alleviated his back pain, it has made it possible for him to maintain full time sedentary work of the type described by the VE in response to a hypothetical. Accordingly, there are jobs available within that RFC which Awan can perform, and the RFC is supported by substantial evidence.

Because the ALJ's examination of the medical evidence regarding the impact of Awan's low back pain on his ability to work was supported by substantial evidence, that decision does not warrant remand.

## V.   RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that the court DENY Awan's Motion for Summary Judgment (ECF No. 15), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 17), and AFFIRM the final decision of the Commissioner.

## VI.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of service of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and

recommendations. Thomas v. Am, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is DIRECTED to provide a copy of this Report and Recommendation to all counsel of record.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

February 9, 2018